UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JONATHAN B. KREISBERG, : | |
| Regional Director of Region 34 of the : | |
| National Labor Relations Board, : | |
| for and on behalf of the NATIONAL : | |
| LABOR RELATIONS BOARD, : | |
| : | |
| Petitioner, : | |
| : | |
| v. : | No. 3:12cv104 (MRK) |
| : | |
| STAMFORD PLAZA HOTEL & : | |
| CONFERENCE CENTER, L.P., : | |
| : | |
| Respondent. : | |

## RULING AND ORDER

Petitioner Jonathan B. Kreisberg, on behalf of the National Labor Relations Board ("NLRB"), seeks a temporary injunction under § 10(j) of the National Labor Relations Act, 20 U.S.C. § 160(j), against Respondent Stamford Plaza Hotel and Conference Center, L.P. ("Stamford Plaza"). The requested injunction would reinstate housekeeping and maintenance employees onto the hotel's payroll pending the resolution of an unfair labor practice proceeding currently in progress. For reasons offered below, the Court grants the NLRB's requested injunction.

**I.**

This Petition arises out of an unfair labor practice complaint brought by the NLRB against Stamford Plaza, where the United Food & Commercial Workers Union, Local 371, began an organizing campaign in June 2011. Targeting the approximately 50 housekeeping, maintenance, front desk, and kitchen employees at Stamford Plaza, the Union was able to collect

1

38 signed union authorization cards by June 16. Of these, 20 were from members of the housekeeping department (out of approximately 22 total housekeepers), and 4 were from members of the maintenance department (out of 5 total employees).

In meetings beginning on June 24, Stamford Plaza informed its employees that the hotel was subcontracting its housekeeping operations to a firm called Labor for Hire, Inc ("LFH") and its maintenance operations to a firm called New York Major Construction ("NYM"). Housekeeping and maintenance employees were given employment applications for these companies. All who applied were hired by the subcontractors; thus employed, they continued doing the same work as before, for roughly the same compensation. Housekeeping and maintenance were the only two departments that were reorganized in this way.

On July 5, the Union filed a certification petition with the NLRB's Hartford office along with 38 signed authorization cards, including 21 from housekeeping and 4 from maintenance. The union withdrew this petition on July 12. In charges filed on July 1 and July 28, the Union alleged that Stamford Plaza had terminated its housekeeping and maintenance employees and begun using subcontractors in response to its discovery of their organizing activities. On November 30, the NLRB issued a complaint repeating these allegations.

Administrative Law Judge Steven Fish heard testimony regarding the NLRB's complaint during hearings held on February 7-9, 2012. The NLRB has requested that this Court use the administrative record produced during these hearings to decide the injunction petition. With no objection from Stamford Plaza, the Court GRANTS the NLRB's Motion [doc. # 2] and relies on the administrative record throughout the present opinion. In addition to the facts just canvassed, the Court will provide other facts from the administrative record as needed in its discussion below.

II.

Section 10(j) of the National Labor Relations Act ("the NLRA") gives the NLRB the

> power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred . . . for appropriate temporary relief or restraining order.

29 U.S.C. § 160(j). The NLRB filed such a petition with this Court on January 20, 2012. It seeks an injunction, which would last until the administrative proceedings are complete, requiring Stamford Plaza to reinstate its terminated housekeeping and maintenance employees and to refrain from interfering with any employee activities protected under the NLRA.

The Second Circuit has long held that "in order to issue a § 10(j) injunction, the district court must apply a two-prong test. First, the court must find reasonable cause to believe that unfair labor practices have been committed. Second, the court must find that the requested relief is just and proper." *Hoffman ex rel. N.L.R.B. v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 364-65 (2d Cir. 2001). The Court will address each prong of this test in turn.

A.

When considering a petition for a § 10(j) injunction, "[t]he district court does not need to make a final determination whether the conduct in question constitutes an unfair labor practice; reasonable cause to support such a conclusion is sufficient." *Id.* at 365. Courts in this Circuit are to give "considerable deference to the NLRB Regional Director" when determining whether reasonable cause exists. *Id.* "[T]he Regional Director's version of the facts should be sustained if within the range of rationality, . . . inferences from the facts should be drawn in favor of the charging party, and . . . even on issues of law, the district court should be hospitable to the views of the General Counsel, however novel." *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1031 (2d Cir. 1980).

Here, the NLRB alleges that Stamford Plaza interrogated its employees about their organizing activities and then discriminatorily subcontracted out the work of its two most pro-union departments, thereby immobilizing the Union's organizing campaign. In support of these allegations, the NLRB points to evidence in the administrative record that Stamford Plaza's Food and Banquet Manager, its Housekeeping Director, its Engineering/Maintenance Director, and a Food and Banquet Supervisor all asked employees questions about employees' organizing activities. Within weeks after those activities began, the hotel subcontracted out its housekeeping and maintenance operations. It made its arrangements with the subcontractors, LFH and NYM, in apparent haste, despite having turned down previous proposals from LFH because of concerns about their service. Stamford Plaza's subsequently proffered reasons for subcontracting have shifted—which the NLRB says suggests pretext. Finally, in August 2011, Stamford Plaza terminated its contract with LFH and then partnered with the other subcontractor to form a new entity, MySpace Management, and placed its housekeepers there. Testimony in the administrative record suggests that Stamford Plaza wanted to keep its former employees in separate companies at least in part so that they would find it more difficult to unionize as a group. *See* Tr. [doc. # 26] at 585.

Stamford Plaza responds by arguing that the supervisors who discussed unionizing with their employees do not count as supervisors or agents of the hotel under §§ 2(11) and 2(13) of the NLRA and, thus, do not establish that Stamford Plaza knew about its employees' union activities prior to its decision to subcontract. Further, the hotel argues that subcontracting was a legitimate business decision. The Court does not need to settle these questions, however; the Administrative Law Judge will do so. For present purposes, it is enough to find that the NLRB's interpretation of the facts is well within the "range of rationality," *Mego Corp.*, 633 F.2d at 1031.

4

Given the timing of Stamford Plaza's decision to subcontract, its shifting explanations for that decision, and the testimony that the hotel continues to structure its subcontracting arrangements with the goal of frustrating union activity, the Court easily finds reasonable cause to believe that unfair labor practices have occurred.

B.

"[I]njunctive relief under § 10(j) is just and proper when it is necessary to prevent irreparable harm or to preserve the status quo." *Inn Credible Caterers*, 247 F.3d at 368. In the words of the Second Circuit:

> [T]he status quo which deserves protection under § 10(j) is not the illegal status quo which has come into being as a result of the unfair labor practices being litigated. Instead, section 10(j) was intended as a means of preserving or restoring the status quo as it existed before the onset of unfair labor practices.

*Seeler v. Trading Port, Inc.*, 517 F.2d 33, 38 (2d Cir. 1975) (citations omitted).

Here, the NLRB is requesting that the *status quo ante*—the situation at Stamford Plaza as of early June 2011—be restored so that the hotel's employees, as a group, can make whatever choices they may wish regarding unionization. According to NLRB, the employees' current division among three separate employers and the fear that that similar retaliatory action might again be taken has brought the Union's previously vibrant organizing activities at Stamford Plaza to a halt.

Stamford Plaza, not unreasonably, responds that the NLRB's delay in filing this Petition itself suggests that immediate injunctive relief is unnecessary. The hotel argues further that its employees have not lost work or wages—they are simply employed by a different company. At oral argument, Stamford Plaza pointed repeatedly to testimony in the administrative record in which one hotel employee claimed, in regard to current working conditions at the hotel, that "[e]verything's fine." Tr. [doc. # 25] at 300.

5

The Court acknowledges that the "just and proper" test presents a closer question than the "reasonable cause" test in this case. Unlike cases in which former employees are now unemployed and new workers have taken their place, here the day-to-day life of Stamford Plaza's employees is not dramatically different than it was before. Stamford Plaza argues that if it loses before the ALJ, the employees could easily be made whole by reinstatement to the hotel's payroll. Of course, the ease with which this could be accomplished might be said to cut the other way as well: it demonstrates how little the NLRB's requested § 10(j) injunction will burden Stamford Plaza, since the hotel is simply being asked to add to its payroll workers who are already cleaning and maintaining its facility and were on its payroll as recently as last year.

More importantly, however, Stamford Plaza's argument ignores the fact that adverse treatment of individual employees is not the touchstone for the "just and proper" inquiry. As the Second Circuit observed in *Inn Credible Caterers*, the proper plaintiff here is the NLRB, not the employees, and the irreparable harm which must be considered is "whether the employees' collective bargaining rights may be undermined . . . and whether any further delay may impair or undermine such bargaining in the future." 247 F.3d at 369.

The NLRB has offered evidence that the hotel's subcontracting scheme has already had "a serious adverse impact on employee interest in unionization." *Kaynard v. Pably Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980). Despite their subsequent re-hiring by the subcontractors, the termination of so many pro-union housekeeping and maintenance employees seems to have frozen, not just chilled, organization efforts at Stamford Plaza. *See Hoffman v. Pennant Foods Co.*, No. 3:08-CV-008 (JCH), 2008 WL 1777382, at *9 (D. Conn. Apr. 15, 2008) ("There is no reason to think that a chilling effect can only take place after a union has already been certified."). As the First Circuit has said, "the disappearance of the 'spark to unionize' may be an

irreparable injury for the purposes of § 10(j)." *Pye v. Excel Case Ready*, 238 F.3d 69, 75 (1st Cir. 2001). Here, especially given the testimony in the administrative record suggesting that Stamford Plaza has structured its present subcontracting arrangements so as to continue thwarting unionization efforts, *see* Tr. [doc. # 26] at 585, the Court finds that an injunction to restore the *status quo ante* is both just and proper.

### III.

Accordingly, the Petition for Preliminary Injunction [doc. # 1] is granted. Until a final decision has been reached regarding the NLRB's Complaint against Stamford Plaza, Stamford Plaza shall:

1. Refrain from interrogating its employees about their union sympathies, union activities, or protected concerted activities;

2. Refrain from laying off employees or subcontracting their jobs because they engaged in union or protected concerted activities or in order to discourage employees from engaging in those activities;

3. Refrain from restraining, coercing, or interfering in any other way with its employees' exercise of rights protected under Section 7 of the NLRA, 29 U.S.C. § 157;

4. Offer, within 30 days of the issuance of this Order, the following 28 employees who were laid off in June 2011 immediate reinstatement to their former positions, without prejudice to their seniority or other rights and privileges previously enjoyed:

    - Charles Islande
    - Anne Auguste
    - Miriam Castillo
    - Carnot Cayo
    - Wesner Eduard
    - Norien Erick
    - Edith Francois

- Esther Garcia
- Rubenia Garcia
- Estimila Jarries
- Elmase Jerome
- Ladislao Monzon
- Zoila Monzon
- Josephine Morris
- Antony Nazaire
- Jean Pierre
- Marie Rejouis
- Ana Rodriguez
- Evangelina Rodriguez
- Mireille St. Victor
- Germithe Telemarque
- Lyudmila Tovshteyn
- Yaolian Ye
- Jaime Diaz
- Edward Maillard
- Carmelo Marquez
- Jose Rivera
- Stanislaw Rysz;

5. Post, within 5 days of the issuance of this Order, copies of Part III of this Ruling and Order, in English and Spanish, at any location at Stamford Plaza where employee notices are customarily placed; and

6. File with this Court and with the Regional Director, within 45 days of the issuance of this Order, a sworn affidavit setting forth with specificity the manner in which Stamford Plaza is complying with the terms of this injunction.

                IT IS SO ORDERED.

                /s/  Mark R. Kravitz
                United States District Judge

**Dated at New Haven, Connecticut: March 22, 2012.**